Lawrence W. Williamson, Jr.
**Shores, Williamson & Ohaebosim, LLC**
*Attorneys and Counselors at Law*
1400 Epic Center
301 N. Main Street
Wichita, Kansas 67202
Phone: (316) 261-5400
Fax:     (316) 261-5404

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| MILDRED SPIRES, as next of kin and Administrator of the Estate of JOSEPH SPIRES, deceased plaintiff, individually and on behalf of all others similarly situated, | Case No.: 06-2137JWL |
| | COMPLAINT-CLASS ACTION |
| Plaintiff, | |
| vs. | |
| HOSPITAL CORPORATION OF AMERICA, | |
| Defendant. | |

## **<u>CLASS ACTION COMPLAINT</u>**

COMES NOW, Mildred Spires on behalf of Mr. Joseph Spires, individually and on behalf of all similarly situated individuals and in support of plaintiff's cause of action against defendant, states and alleges as follows:

CLASS ACTION COMPLAINT

## I.  GENERAL ALLEGATIONS

1.         Hospital Corporation of America (HCA) is a symbol of greed.  It is undeniable that hospitals play an important role in society.  Hospitals are entrusted with the care of the most citizens at the most vulnerable stages in their life: often accompanied by sickness or another serious health issue.  It is this vulnerability that HCA has taken advantage of.  The defendant has used its clout to reduce competition in major markets and has developed and utilized a plan that concentrates on the bottom line and not patient care.  At one point in time, the defendant had approximately 285,000 employees, more than 350 hospitals, 145 outpatient surgery centers, 550 home care agencies.

2.         Defendant has set a target to become a 50 billion dollar company.  The defendant has attempted to become a 50 billion dollar company at the expense of its patients.  In order to reach this goal, HCA has committed fraud by presenting false claims to the federal government, deceiving investors and has jeopardized the safety of patients.  HCA has now placed its sights on the baby boomers.  HCA has also targets hospital takeovers in "large, fast growing urban communities."   HCA has erroneously decided that costs saved by improperly staffing the hospital outweigh the risk of lawsuits for injuries and deaths resulting from understaffing.

3.         Defendant HCA has engaged in systematic understaffing of RNs throughout all of its hospitals.   This systematic practice places patients at increased risks for various health ailments, including infection, bed sores, and death.

4.         This action seeks an end to the defendant's reckless practices, restitution, and punitive damages.

## II.        JURISDICTION AND VENUE

5.         Jurisdiction of this Court is invoked, for purposes of plaintiffs' claims pursuant to the Class Action Fairness Act of 2005.

6.         Venue is proper in this court under 28 U.S.C. § 1391(b).

## III.        PARTIES

CLASS ACTION COMPLAINT

7.        Plaintiff Mildred Spires is the surviving spouse of the decedent Joseph Spires and is administrator of the Estate of Joseph Spires.

8.        Defendant HCA, Inc., is a Delaware corporation, with its principal place of business located in Nashville, Tennessee. HCA often touts itself as one of the largest health care providers in the United States and operates one-hundred ninety-one (191) hospitals and eighty-two (82) outpatient surgery centers in twenty-three (23) states, England and Switzerland.  HCA has generated revenues in excess of $24 billion in 2005.  These revenues and the net income were wrongfully obtained by the defendant as a direct result.  HCA is a public company founded by current United States Senator Bill Frist's father, Dr. Thomas Frist Sr. and his brother, Dr. Thomas Frist Jr.  Dr. Thomas Frist, Jr. currently has an estimated net worth of $1.5 billion. Bill Frist recently divested himself of any interest in HCA: a transaction under investigation by the Securities and Exchange Commission (SEC).

## IV.    FACTUAL ALLEGATIONS

### A. Defendant's Obsession of Profits Has Lead to Tight Oversight and Chronic Understaffing

9.        The defendant has increased its wealth while exposing patients to increased risks of danger; all while promising patients that their safety was a foremost concern for the company. The defendant failed to include in its advertisements the fact that safety may be important: so long as it does not jeopardize the defendant's profit margin.

10.        In, or around, 1996, the defendant's obsession to become a fifty billion dollar company led it to create a cost-cutting strategy that included the implementation of numerous software systems that allowed the defendant to standardize its operations over a nationwide network.  As one of the largest ways to reduce costs is to cut staffing, a major portion of the defendant's initiative involved a reduction of the defendant's staffing in order to increase its revenues.  The defendant's reduction of staffing of registered nurses (RN) is the evil and the fuel that led to the revenues that has allowed the defendant to expand into all its markets.  The

CLASS ACTION COMPLAINT

defendant's tactics also include utilizing less qualified and cheaper labor in the form of nurse aides and CNAs, despite the fact that a CNA and nurse aide cannot do the same duties as a RN.

11.     The defendant's obsession to become a fifty billion dollar company also led to the development of an internal labor productivity system: the Productivity Labor Management System, known as "PLUS".

12.     The PLUS system was developed in the mid to late 1990s by HCA's IT department as a way to manipulate RN levels and decrease labor costs at its hospitals.  HCA's IT department is also known as IT&S (Information Technology & Systems).  This PLUS system is a reflection of the defendant's obsession with the bottom line rather than the well-being of the patients it serves because the defendant has decreased staffing of RNs to dangerously low levels that harms no one but the patient.

13.     Also, during this same time frame, the defendant consolidated operations and implemented a consumer-directed marketing strategy that was designed to lure patients into all HCA owned hospitals including Wesley Medical Center.  As a result, the defendant has standardized monitoring of its locations.

14.     The defendant also sets the policies complained of in this complaint.  For instance, the defendant sends staffing standards to all of its hospitals on a regular basis.  Moreover, hospitals' administrators are prohibited from varying its staffing from the defendant's staffing standards.  In short, HCA is making hospital administrators understaff its hospitals. Unfortunately for patients and their families, the violations and unsafe and unprofessional practices described above are part of an overall corporate practice that permeates the company's operations.

**B. Nurses Shortage Is Dangerous and Defendant Knows It**

15.     There have been several studies conducted regarding understaffing.  For instance, one study estimates that mistakes related to understaffing contribute to a quarter of all deaths in

CLASS ACTION COMPLAINT

American hospitals.  This is nearly equal to the number of people who die annually from AIDS, car accidents, and breast cancer combined.

16.     Another study also showed that the death rate can be decreased by reducing the number of patients a RN must care for.  For instance, as the patient assignment per RN increases from 4:1 to 6:1, the number of deaths per 1000 is 2.3.  If the ratio increases from 6:1 to 8:1, then the number of deaths per 1000 rises to 2.6.  If the ratio increases from 4:1 to 8:1, the rate of deaths per 1000 escalates to 5.0.

17.     Despite the chilling dangers that understaffing can cause, the defendant has simply placed "the dollar" over safety.  The defendant's patient to RN ratio is sometimes equal 12 to 1.  Based on studies mentioned and the fact that the defendant boasts to treat more than fourteen million patients a year, means that one can expect more than 70,000 deaths from visits to HCA institutions each year: because the defendant can raise revenue.  This does not include those patients who receive treatable infections and other illnesses.  On the other hand, thirteen studies indicated that hospitals with higher RN to patient ratios had fewer deaths.

18.     In addition to the general studies, the defendant has simply ignored the negative reports that have arisen as a result of its labor system.  Soon after the implementation of the defendant's labor system, and continuing to today, the nurses in the defendant's hospitals and doctors utilizing the hospital's facilities have presented scathing reports and complaints that the defendant's labor system is dangerous for patients in the defendant's hospital.

19.     Additionally, the defendant's labor system causes nurses to be overwhelmed and unable to attend to patients.  For instance, at least one nurse from hospitals owned by HCA have stated that RNs are required to have more patients than they can adequately and safely care for.  This, in turn, often leads to prolonged waits in emergency rooms, inability to address properly address emergencies, post-surgical infections and in the case of Mr. Spires; death.

**C.  Locations Where the Above Described Practices are Dictated**

**Alaska**

CLASS ACTION COMPLAINT

Alaska Regional Hospital
California
Good Samaritan Hospital
Los Gatos Surgical Center
Los Robles Hospital &Medical Center
Los Robles Surgicenter
Regional Medical Center
San Jose Riverside Community Hospital
Riverside Community Surgicenter
West Hills Hospital & Medical Center
West Hills Surgical Center

**Colorado**

Centrum Surgical Center
Lakewood Surgical Center
Midtown Surgical Center
North Suburban Medical Center
Presbyterian/St Luke's Medical Center
Rose Medical Center
Sky Ridge Medical Center
Sky Ridge Surgical Center
Spalding Rehabilitation Hospital
Swedish Medical Center
The Medical Center of Aurora

**Florida**

Ambulatory Surgery Center-Tampa
Aventura Hospital and Medical Center
Bayonet Point Surgery and Endoscopy Center
Belleair Surgery Center
Blake Medical Center
Bonita Bay Surgery Center
Brandon Regional Hospital
Brandon Surgery Center
Capital Regional Medical Center
Cedars Medical Center
Center for Special Surgery
Central Florida Regional Hospital
Central Florida Surgicenter
Columbia Hospital Community Hospital
Countryside Surgery Center
Doctors Hospital of Sarasota Doctors
Same Day Surgery Center
Edward White Hospital Englewood

CLASS ACTION COMPLAINT

Community Hospital
Fawcett Memorial Hospital
Florida Surgery Center
Fort Walton Beach Medical Center
Gulf Coast Hospital
Gulf Coast Medical Center
Gulf Coast Surgery Center
Jacksonville Surgery Center
JFK Medical Center
Kendall Regional Medical Center
Kissimmee Surgery Center
Luke City Medical Center
Largo Medical Center
Lawnwood Regional Medical Center and Heart Institute
Memorial Hospital Jacksonville
Meritt Island Surgery Center
New Port Richey Surgery Center
North County Surgicenter
North Florida Regional Medical Center
North Florida Surgical Pavilion
North Miami Beach Surgical Center
Northside Hospital and Heart Institute
Northwest Medical Center
Oak Hill Hospital
Ocala Regional Medical Center
Orange Park Medical Center
Orange Park Surgery Center
Osceola Regional Medical Center
Outpatient Surgical Services
Palms West Hospital
Parkside Surgery Center
Plantation General Hospital
Plaza Surgery Center
Raulerson Hospital
Regional Medical Center
Bayonet Point Same Day Surgicenter of Orlando
South Bay Hospital
Southwest Florida Regional Medical Center
St. Lucie Medical Center
St. Lucie Surgery Center
St Petersburg General Hospital
Surgery Center at Coral Springs
Surgery Center at St Andrews
Surgical Park Center
Tallahassee Outpatient Surgery Center
Tampa Eye and Specialty Surgery Center

CLASS ACTION COMPLAINT

Twin Cities Hospital
University Hospital and Medical Center
West Florida Hospital
West Marion Community Hospital
Westside Regional Medical Center

**Georgia**

Atlanta Outpatient Surgery Center
Atlanta Outpatient Peachtree Dunwoody Center
Augusta Surgical Center
Buckhead Ambulatory Surgery Center
Cartersville Medical Center
Coliseum Medical Centers
Coliseum Psychiatric Center
Coliseum Same Day Surgery Center
Doctors Hospital Surgery Center
Doctors Hospital
Doctors Hospital
Emory Dunwoody Medical Center
Emory Eastside Medical Center
Fairview Park Hospital
Hughston Orthopedic Hospital
Macon Northside Hospital
Marietta Surgical Center
Northlake Medical Center
Northlake Surgical Center
Palmyra Medical Centers
Pediatric Center at Atlanta Outpatient
Polk Medical Center
Redmond Regional Medical Center
Surgery Center of Rome

**Idaho**

Eastern Idaho Regional Medical Center
West Valley Medical Center
Terre Haute Regional Hospital

**Kansas**

Allen County Hospital
Menorah Medical Center
Overland Park Regional Medical Center
Surgicenter of Johnson County
Surgicare of Wichita

CLASS ACTION COMPLAINT

Wesley Medical Center

**Kentucky**

Frankfort Regional Medical Center
Greenview Regional Hospital

**Louisiana**

Avoyelles Hospital
Dauterive Hospital
DePaul-Tulane Behavioral Health Center
Lafayette Surgicare
Lakeside Hospital
Lakeview Regional Medical Center
North Monroe Medical Center
Oakdale Community Hospital
Rapides Regional Medical Center
Savoy Medical Center
Southwest Medical Center- Lafayette
Tulane University Hospital and Clinic
Winn Parish Medical Center
Women's & Children's Hospital

**Mississippi**

Garden Park Medical Center
Gulfport Outpatient Surgery Center

**Missouri**

Baptist-Lutheran Medical Center
Independence Regional Health Center
Lafayette Regional Health Center
Lee's Summit Hospital
Medical Center of Independence
Research Belton Hospital
Research Medical Center
Research Psychiatric Center
Surgicenter of Kansas City

**Nevada**

Flamingo Surgery Center
Las Vegas Surgery Center
Mountainview Hospital

CLASS ACTION COMPLAINT

Sahara Surgery Center
Southern Hills Hospital and Medical Center
Sunrise Hospital and Medical Center

**New Hampshire**

Parkland Medical Center
Portsmouth Regional Ambulatory Surgery Center
Portsmouth Regional Hospital
Salem Surgery Center

**North Carolina**

Brunswick Community Hospital

**Oklahoma**

Edmond Medical Center
Oklahoma Surgicare
OU Medical Center
Southwestern Medical Center
Surgicare Midtown

**South Carolina**

Colleton Ambulatory Medical Center
Colleton Surgery Center
Grand Dunes Surgery Center
Grand Strand Regional Medical Center
Trident Ambulatory Surgery Center
Trident Eye Surgery Center
Trident Medical Center

**Tennessee**

Atrium Memorial Surgery Center
Centennial Medical Center
Centennial Medical Center at Ashland City
Centennial Surgery Center
Grandview Medical Center
Hendersonville Medical Center
Horizon Medical Center
Parkridge East Hospital
Parkridge Medical Center
Parkridge Valley Hospital
River Park Hospital

CLASS ACTION COMPLAINT

Skyline Medical Center
Southern Hills Medical Center
Stonecrest Medical Center
Summit Medical Center
Summit Surgery Center

**Texas**

Bailey Square Surgery Center
Bay Area Surgicare Center
Bayshore Medical Center
Bayshore Surgery Center
Clear Lake Regional Medical Center
Conroe Regional Medical Center
Corpus Christi Medical Center
Del Sol Medical Center
Denton Regional Medical Center
East El Paso Surgery Center
East Houston Regional Medical Center
Gramercy Outpatient Surgery Center
Green Oaks Hospital
Kingwood Medical Center
Las Colinas Medical Center
Las Colinas Surgery Center
Las Palmas Medical Center
Mainland Medical Center
McKinney Surgery Center
Medical Center of Arlington
Medical Center of Lewisville
Medical Center of McKinney
Medical Center of Plano
Medical City Dallas Hospital
Methodist Ambulatory Surgery Center-Medical Center
Methodist Ambulatory Surgery Center-North Central
Methodist Ambulatory Surgery Center-Northeast
Methodist Ambulatory Surgery Hospital Northwest
Methodist Children's Hospital of South Texas
Methodist Hospital
Methodist Specialty & Transplant Hospital
Metropolitan Methodist Hospital
North Austin Medical Center
North Austin Medical Center Assoc
North Hills Hospital
Northeast Methodist Hospital
Oakwood Surgery Center
Park Central Surgical Center

CLASS ACTION COMPLAINT

Plaza Day Surgery
Plaza Medical Center of Fort Worth
Rio Grande Regional Hospital
Rio Grande Surgery Center
Round Rock Medical Center
South Austin Hospital
Spring Branch Medical Center
St. David's Medical Center
St David's Pavilion
St. David's Rehabilitation Center
Surgery Center of El Paso
Surgery Center of Plano
Surgicare of Corpus Christi
Surgicare of South Austin
Texas Orthopedic Hospital
Texas Pediatric Surgery Center
Valley Regional Medical Center
West Houston Medical Center
Woman's Hospital of Texas

**Utah**

Brigham City Community Hospital
Lakeview Hospital
Mountain View Hospital
Ogden Regional Medical Center
St. Mark's Hospital
St. Mark's Outpatient Surgery Center
Timpanogos Regional Hospital

**Virginia**

Alleghany Regional Hospital
CJW Medical Center
Clinch Valley Medical Center
Dominion Hospital
Fairfax Surgical Center
Hanover Outpatient Surgery Center
Henrico Doctors Hospital
John Randolph Medical Center
Lewis-Gale Medical Center
Montgomery Regional Hospital
Northern Virginia Community Hospital
Pulaski Community Hospital
Reston Hospital Center
Reston Surgery Center

CLASS ACTION COMPLAINT

Retreat Hospital
Tuckahoe Surgery Center

**Washington**

Capital Medical Center

**West Virginia**

Putnam General Hospital
Raleigh General Hospital
St. Francis Hospital
St. Joseph's Hospital

**International**

**England**

London Bridge Hospital London
The Harley Street Clinic London
Lister Hospital London
The Portland Hospital for Women and Children London
Princess Grace Hospital London
The Wellington Hospital London

**Switzerland**

Clinique De Carouge
Hopital de la Tour

### D.  Plaintiff Joseph Spires Suffered from Defendant's Practice

20.     Joseph Spires was admitted to a HCA owned hospital, Wesley Medical Center, on April 20, 2004.  Mr. Spires never left Wesley alive.

21.     On April 21, 2004, Mr. Spires was scheduled to receive a surgical procedure.  The procedure was scheduled to being a 7:30 a.m.  Once in surgery, Mr. Spires' doctor experienced some difficulty in Mr. Spires' surgery.  The response to this difficulty was delayed due to the fact that there was a shortage of nurses in the operating room during the entire procedure.

22.     After some time, Mr. Spires' doctor was able to control the emergent situation and the doctor concluded the surgery.  Mr. Spires was then assigned to the critical care unit in

CLASS ACTION COMPLAINT

critical, but stable condition.  The doctor provided specific instructions for Mr. Spires' care and required specific monitoring of Mr. Spires.

23.      However, Mr. Spires did not receive the monitoring or treatment as required by the doctor.  The RN's were spread too thin on April 21, 2004 and April 22, 2004 and were simply unable to care and monitor Mr. Spires as required.  Based on this inadequate monitoring and care, Mr. Spires passed away on April 22, 2004.  Additionally, Mr. Spires would lay dead for at least an hour before anyone realized that he had passed away.  It was only learned that Mr. Spires was passed away when a doctor happened to visit regarding an unrelated issue.

24.      The lack of monitoring from the nurses is a direct result of the defendant' labor system that causes its hospitals to be consistently understaffed and caused or contributed to Mr. Spires' death.

## V.   CLASS ALLEGATIONS

25.      Plaintiff sues individually and on behalf of a Class of persons pursuant to F.R.C.P. 23 (b)(1), (b)(2) and/or (b)(3).  The named plaintiff brings this action on behalf of the following class:

> all individuals who have been admitted to or attempted to be admitted to or will attempt or will be admitted to an HCA owned hospital and subjected to the labor practices of the defendant since January 1, 1996.

26.      The above-described individuals constitute the "Class" for the purposes of this lawsuit.  Plaintiff reserves the right to amend this class definition.  Based on this definition, the class members are identifiable from defendant's own computer records.

**A.      Fed. R. Civ. Pro. 23(a)**

**1.      Numerosity Requirement**

27.      There are millions of Class members.  Defendant touts to treat in excess of fourteen million patients annually.   The Class is so large that joinder of all members is

CLASS ACTION COMPLAINT

impracticable.  Plaintiff will be able to adequately define the number of class members once certification discovery is complete.

    **2.**    **Existence of Questions of Common Law and Fact**

28.    Questions of law and facts common to the class include:

    a.   whether the defendant has intentionally jeopardized the safety of patients;

    b.   whether the plaintiff and Class have been damaged from defendant's actions;

    c.   whether the defendant should be enjoined from engaging in the behavior described in this Complaint;

    d.   whether defendant was negligent in utilizing its labor standards;

    e.   whether the PLUS system or any other labor standard utilized by the defendant is unsafe;

    f.   whether persons who visited hospitals owned and operated by the defendant are at increased risk of developing serious injuries because of the defendant's labor practices;

    g.   whether the defendant was aware any dangers that its labor model posed to patients;

    h.   whether injunctive relief is appropriate;

    i.   whether, in marketing its hospitals, defendant failed to disclose the dangers and risks to patients due to the defendant's labor policies;

    j.   whether defendant utilizes centralized policies and procedures;

    k.   whether defendant has a pattern and practice in engaging in unfair, unlawful, and deceptive trade practices within the meaning of any state's consumer protection statutes;

    l.   whether defendant falsely and fraudulently misrepresented in its advertisements, promotional materials and other materials, among other things, quality of care; and

CLASS ACTION COMPLAINT

m.  whether defendant knowingly omitted, suppressed or concealed material facts about the unsafe and defective nature of its labor system.

**3.      Typicality of Claims**

29.      Plaintiff's claims are typical of the claims of the Class.

**4.      Adequacy of Representation**

30.      Plaintiff's and Class counsel will fairly and adequately protect the interests of the Class.

**B.      Fed. R. Civ. Pro. 23(b) Requirements**

31.      **(b)(1)**:  The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class.  Adjudications with respect to individual members of the class would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or would substantially impair or impede their ability to protect their interests.

32.      **(b)(2)**:  The defendant has acted/refused to act and is acting/refusing to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or corresponding declaratory relief to the Class as a whole.

33.      **(b)(3)**:  Common questions of fact and law predominate over questions affecting only individual members.

34.      A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Kansas law will apply to all claims certified in this action.  To the extent that the court determines that another state's law applies, any potential variation between such states' law and Kansas law will not affect any applicable provision under F.R.C.P. 23(b)(3), including, but not limited to the superiority of a class action.  Plaintiffs currently do not seek to certify a compensation class, but reserve the right to seek certification under this provision.

CLASS ACTION COMPLAINT

35.     There are no unusual difficulties likely to be encountered in the management of this litigation as a class action.

36.     Notice to the Class may be accomplished inexpensively, efficiently and in a manner best designed to protect the due process rights of all Class members by means of written notices supplied through defendant's system of communication with current and past customers as defendant maintains databases of its previous customers and their then reported addresses. Plaintiff will also institute a web based notice system directly accessible through plaintiff's counsel's web site www.swolawfirm.com.

**Count I: Consumer Protection Violations**

37.     Plaintiff and Class adopt and incorporate the preceding paragraphs as fully set forth herein. This cause of action is brought by plaintiff on behalf of the general public.

38.     The acts, omissions, misrepresentations, practices and non-disclosures of HCA as alleged herein, constituted unlawful, deceptive, unfair and fraudulent business acts and practices and untrue and misleading advertising within the meaning of all relevant states' Consumer Protection Act.  Plaintiff and class have been damaged by the defendant's violations of these statutes.

39.     For example, defendant has engaged in the following "unlawful" and unfair business acts and practices, including but not limited to:

a.  HCA's systemic failure to provide adequate nursing care as detailed above is an unfair business practice that offends the public policy of each state that the defendant does business in.

b.  In making the representations of fact described herein, HCA has violated, the relevant states' consumer protection statutes by failing to fulfill its duty to publicly disclose the material true facts as detailed herein.

CLASS ACTION COMPLAINT

c. By placing its patients in an adverse if not unsafe condition, without disclosing the material facts to the patient, HCA has violated the relevant states' consumer protection statutes;

d. The policies, acts and practices alleged herein were intended to result in the purchase of services by the consuming public and violated and continue to violate the relevant states' consumer protection statutes.

e. The misrepresentations and non-disclosures of the material facts by HCA as detailed above also constitute false or misleading advertising in violation of the relevant states' consumer protection statutes. Accordingly, HCA has violated the universal proscription against engaging in an "unlawful" business act or practice.

40.     HCA has also engaged in a "fraudulent" business act or practice in that the representations and omissions of material fact described above have a likelihood of deceiving patients, their families and the general public.  The above-described unlawful, fraudulent, or unfair business acts and practices conducted by defendants still continue to this day and present a threat to plaintiff and the general public in that defendant has failed and refused to publicly acknowledge the wrongfulness of its actions and to remedy their conduct, publicly issue individual and comprehensive corrective notices and advertising to patients, their families and to the public generally, and provide full equitable relief attributable to all funds either wrongfully acquired or retained by them as a result thereof.

## Count II: Negligence

41.     Plaintiffs and Class adopt and incorporate the preceding paragraphs as fully set forth herein.  This cause of action is brought by plaintiff on behalf of the general public.

42.     Defendant owed to plaintiff and the Class a duty of reasonable care.  Defendant breached its respective duties of care to plaintiff and the Class in that defendant was negligent in the performance of the acts described above and as a result committed negligent acts and omissions as set forth above.

CLASS ACTION COMPLAINT

43.     Such negligence included, among other things, the defendant has implemented a labor system that it knows places patients at an increased risk for infections, various injuries and illnesses, as well as death.

44.     As a proximate result of the defendant's negligent conduct, plaintiff and the Class have sustained and will sustain substantial damages.

### Count III: Unjust Enrichment

45.     Plaintiffs adopt and incorporate by reference all of the preceding paragraphs as if fully set forth herein.  This cause of action is brought by plaintiffs on behalf of the general public.

46.     To the detriment of plaintiffs and members of the class, defendant has been, and continues to be unjustly enriched through benefits as a result of the unlawful and/or wrongful, *inter alia*, payments received because of the defendant's misrepresentations.  Defendant has been, and continues to be aware of the benefit that it continues to receive.

47.     Defendant has unjustly benefited through the receipt of the unlawful and/or wrongful, payments.  It is inequitable for defendant to keep, and continue to receive, the benefits conferred.

### Count IV: Declaratory Relief

48.     Plaintiffs and Class adopt and incorporate the preceding paragraphs as fully set forth herein.  This cause of action is brought on behalf of plaintiff and Class.

49.     All relevant states' consumer protection statutes prohibit various deceptive practices in connection with the dissemination in any manner of representations for the purpose of inducing or which are likely to induce, directly or indirectly, the purchase of services or goods here at issue.  The policies, acts and practices alleged herein were intended to, and did, induce the purchase of health services at issue and violated and continue to violation of all relevant states' consumer protection statutes.

CLASS ACTION COMPLAINT

50.     There currently exists between the parties an actual controversy regarding the respective rights and liabilities of the parties regarding the existence of and/or need to injunctive relief.

51.     Plaintiff and members of the general public may be without adequate remedy at law rendering injunctive and other equitable relief appropriate in that:

    a.  Damages may not adequately compensate plaintiff and the general public for the injuries suffered, nor may other claims for relief permit such an award;

    b.  The relief sought herein in terms of defects may not be fully accomplished by awarding damages; and

    c.  If the conduct complained of is not enjoined, significant harm will result to plaintiff and the general public because defendant's conduct is continuing and on-going and the injuries which result from these failures can occur at anytime.

52.     The general public will suffer irreparable harm if defendant is not ordered to undertake the injunctive and equitable relief.  The scope and form of injunctive relief to be requested will be identified once plaintiff has to opportunity to determine exactly how deep the defendant's misrepresentations run.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, plaintiff and the Class pray for relief as follows:

    A)     Certification of the case as a class action on behalf of the proposed plaintiff Class and designation of plaintiff as representative of the Class and counsel of record as Class Counsel;

    B)     For plaintiff's individual, non-class claims, all damages they have sustained as a result of defendant's conduct, according to proof;

    C)     For plaintiff's individual and class claims, exemplary and punitive damages in an amount commensurate with defendant's ability to pay and to deter future conduct;

CLASS ACTION COMPLAINT

D)     For plaintiff's individual and class claims, injunctive and equitable relief against defendant and its directors, officers, owners, agents, successors, employees and representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs and usages set forth herein including restitution of illegally gained revenues no less than $12.25 billion and disgorgement of profits, to the extent such relief is equitable.  Plaintiff does not seek compensatory damages on behalf of the Class.

E)     Costs incurred, including reasonable attorneys' fees, to the extent allowable by law;

F)     Pre-Judgment and Post-Judgment interest, as provided by law; and

G)     Such other and further legal and equitable relief as this Court deems necessary, just and proper.

DATED:  April 10, 2006

Respectfully submitted,

_____s/Lawrence W. Williamson, Jr._____
Lawrence W. Williamson, Jr. #21282
Uzo L. Ohaebosim            #20983
**Shores, Williamson and Ohaebosim, LLC**
1400 Epic Center,
301 N. Main Street
Wichita, Kansas  67202-4814
Telephone: (316) 261-5400
Facsimile:  (316) 261-5404
*Attorneys for plaintiffs and Class*

## DEMAND FOR A JURY TRIAL

CLASS ACTION COMPLAINT

COMES NOW plaintiffs and Class, by and through counsel, and respectfully requests that this matter be set for a jury trial.  Kansas City, Kansas designated for place of trial.

By: s/Lawrence W. Williamson, Jr.
Lawrence W. Williamson, Jr.  #21282
*Attorney for plaintiffs and Class*

CLASS ACTION COMPLAINT