IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MILDRED SPIRES, as next of kin and
Administrator of the Estate of JOSEPH
SPIRES, deceased plaintiff; THERESA A.
ADAMS as Administrator of the Estate of
LEON E. ADAMS, deceased plaintiff,
individually and on behalf of all others
similarly situated,

            Plaintiffs,


            vs.                            Case No. 06-2137-JTM


HOSPITAL CORPORATION OF
AMERICA,

            Defendant.

## MEMORANDUM AND ORDER

This is an action by the two named plaintiffs seeking recovery on the part of their decedents

who were allegedly killed by nurse staffing policies which were imposed by defendant Hospital

Corporation of America (HCA) on its member hospitals, as well as recovery for a proposed class

which would include

> all individuals who have been admitted to or has attempted to be admitted to or will
> attempt or will be admitted to an HCA owned hospital located in the United States
> and subjected to the staffing practices of the defendant since January 1, 1996.

Amended Complaint, at ¶ 49.  The plaintiffs raise claims for consumer protection violations,

negligence, unjust enrichment, and for injunctive and declaratory relief.

Five motions are now before the court.  Only one of these motions has been fully briefed, but

this motion — defendant HCA's Motion to Dismiss (Dkt. No. 26) — renders moot the remaining

motions and is dispositive of the issues raised therein. The remaining motions are motions by the plaintiffs seeking leave to amend (Dkt. No. 37); seeking permission to file a Second Amended Complaint and for a determination of the appropriate choice of law (Dkt. No. 39); motions by the defendant for a protective order (Dkt. No. 41); and to strike class allegations (Dkt. No. 44). The court finds that defendant's Motion to Dismiss should be granted, and the remaining motions denied as moot.

HCA's motion to dismiss raises multiple arguments against the various claims advanced by the plaintiffs, including the argument that the plaintiffs have failed to plead their claims of misrepresentation under the Kansas Consumer Protection Act with particularity. The court finds that it need not address all of these particular issues since it is clear that plaintiffs' consumer protection and unjust enrichment claims should be dismissed since the claims in the present case are in reality claims for negligent medical practice. Rather than advancing medical malpractice claims, plaintiffs have attempted to translate their claims into the language of consumer protection law, but the reality of the case cannot be so easily disguised, and plaintiffs' claims will be dismissed.

In this context, the plaintiffs correctly note that consumer protection acts have been held to apply to claims based on those "entrepreneurial aspects" of medicine which do not involve the "actual competence of the medical practitioner." *See Quinby v. Fine*, 724 P.2d 403 (Wash.App. 1986); *Dorn v. McTigue*, 121 F.Supp.2d 17, 20 (D.D.C. 2000).

But the plaintiffs' allegations that the defendant hospital employed a level of medical staff insufficient to meet the required medical standard of care are inherently claims involving questions of medical judgment. *See Goldberg v. Northeastern University*, 805 N.E.2d 517, 520 (Mass.App.Ct. 2004) ("the subject of establishing, staffing, and operating a health care center, including

determinations regarding adequate staff configurations on weekends, involves quintessentially medical judgments..."); *Dorris v. Detroit Osteopathic Hosp. Corp.*, 594 N.W.2d 455, 465 (Mich. 1999) ("these allegations concerning staffing decisions and patient monitoring involve questions of professional medical management and not issues of ordinary negligence that can be judged by the common knowledge and experience of a jury"). Thus, in *Diversicare General Partner, Inc., v. Rubio*, 185 S.W.2d 842, 851 (Tex. 2005), the court wrote:

> Is expertise in the health care field required to determine the appropriate number, training, and certifications of medical professionals necessary to care for and protect patients in weakened conditions from injury by other patients in a health care facility? We think so.

Similarly, in *Dorn v. McTigue*, 121 F.Supp. 17 (D.D.C. 2000), the court rejected a patient's claim of unintentional misrepresentation under the District of Columbia Consumer Protection Procedures Act (CPPA). After noting the decisions in *Quimby v. Fine,* 45 Wash.App. 175, 724 P.2d 403 (1986), *Nelson v. Ho*, 564 N.W.2d 482, 486 (Mich.App. 1997), and *Gadson v. Newman*, 807 F.Supp. 1412, 1420 (C.D.Ill.1992), the court concluded that consumer protection law was not an appropriate vehicle for the plaintiff's claims:

> Applying this analytical framework, the court determines that based on the facts in this case, the plaintiff's unintentional-misrepresentation claim falls outside the scope of the CPPA as it applies to the physician-patient relationship. The court reaches this conclusion based on the test outlined in its July 26, 1999 Memorandum Opinion. In that opinion, this court adopted the *Gadson* court's holding which underscored the importance of preventing overlap between medical-malpractice claims and consumer-protection claims. "The distinction between the business aspects of medicine or the 'actual practice of medicine' or the non-business aspects of medicine is crucial." *Gadson*, 807 F.Supp. at 1416.

> Therefore, even assuming arguendo that the plaintiff could prove that the defendant made an unintentional misrepresentation regarding the plaintiff's surgery, such a misrepresentation merely amounts to *the actual practice of medicine*. Such an unintentional misrepresentation would speak not to the entrepreneurial aspect of the

defendant's practice, but instead to his skill and competence as a doctor. Any resulting injury would be properly remedied by a medical-malpractice claim, not a CPPA claim.

121 F.Supp. at 20 (emphasis in original).

Kansas law explicitly requires that hospitals make staffing determinations based upon appropriate medical judgments. *See* K.A.R. 28-34-59(c) (requiring hospitals devote "adequate physical resources and personnel"), K.A.R 28-34-7(g) (requiring nursing policies in accordance with generally accepted hospital practice); K.A.R 28-34-9a(c) (requiring hospitals keep policies which "support sound patient care"); and K.A.R 28-34-17b(a) (requiring adequate provision of surgical services). By their inherent nature, the plaintiffs' claims will require an assessment of the medical judgments employed by the various hospitals in question.

Courts should avoid reclassifying what are essentially medical malpractice claims as some other form of action. In *Bonin v. Vannaman*, 261 Kan. 199, 929 P.2d  754 (1996), the Kansas Supreme Court rejected such an attempted reformulation. The plaintiff sued her physician for failing to diagnose her scoliosis, denominating her claim as fraud by silence rather than malpractice in order to avoid the application of a statute of repose. The court agreed that the claim otherwise met the technical elements of fraud, but stressed that at heart the action was for medical negligence —

> Based on the above cases, Dr. Vannaman alleges that he has a duty, in treating or diagnosing patients, to use ordinary care and diligence and the degree of learning ordinarily possessed by members of his profession in the same community under like circumstances. The failure to uphold such standard is a form of negligent treatment called malpractice. PIK Civ.2d 15.01 and Comment. According to Dr. Vannaman, Amanda is alleging that he did not use ordinary care and diligence, as other doctors would have used, when he failed to disclose the information on her chest x-ray and when he failed to diagnose her scoliosis in its mild stage. As such, Dr. Vannaman asserts that this is a cause of action for malpractice, not fraud.

4

We agree. It is true that Dr. Vannaman's alleged conduct fulfills all of the elements of fraud by silence under PIK Civ.2d 14.42, just as the Med Center's actions in *Malone* [*v. University of Kansas Medical Center*, 220 Kan. 371, 552 P.2d 885 (1976)] fulfilled all of the elements of a breach of contract. However, Dr. Vannaman's alleged conduct was also proscribed by a legal duty which he had an obligation to uphold. When it is alleged that such legal duty is violated, the law has classified the cause of action created by this breach as a form of negligence called malpractice, not as fraud or breach of contract, even if the violation of such duty also technically fulfills the elements of fraud or breach of contract. Amanda does not allege a valid claim of fraud against Dr. Vannaman.

....

Since Amanda's claim for fraud is not valid, the doctrine of fraudulent concealment cannot exist in this case. The doctrine may not be utilized to extend the time for Amanda to file either her malpractice claim or her invalid fraud claim. Thus, the only claim Amanda has against Dr. Vannaman is a malpractice claim grounded in negligence.

261 Kan. at 210, 929 P.2d at 764.

One case has explicitly addressed the issue in the context of consumer protection, and the

result offers no support for plaintiffs' position. In *Haynes v. Yale-New Haven Hosp.*, 699 A.2d 964

(Conn. 1997), the court wrote:

[T]he touchstone for a legally sufficient CUIPA claim against a health care provider is an allegation that an entrepreneurial or business aspect of the provision of services is implicated, *aside from medical competence or aside from medical malpractice based on adequacy of staffing, training, equipment or support personnel.* Medical malpractice claims recast as CUPTA claims cannot form the basis for a CUPTA violation. To hold otherwise would transform every claim for medical malpractice into a CUPTA claim.

699 A.2d at 974 (emphasis added). The emphasized language is clearly contrary to the argument

advanced here by plaintiffs, whose attempts to distinguish the case are singularly unpersuasive. The

plaintiffs in *Haynes* raised claims similar to those advanced here — that the defendant hospital

violated the state consumer protection act by its medical staffing decisions. *See also Tipton v.*

5

*William Beaumont Hosp.*, 697 N.W.2d 552, 554 (Mich. App. 2005) (holding that the plaintiff's claim that a hospital had failed to inform her of prior malpractice claims "contain the distinguishing characteristics of a medical malpractice case" rather than a claim under the state consumer protection act).

The plaintiffs have taken some care to try to repeat at every possible instance the alleged economic motive for defendant's actions.   Thus, in the amended complaint we learn that the defendant HCA is "a symbol of greed" (Dkt. No. 23, at ¶ 1) which suffers from an "obsession for profits." (Id. at ¶ 11).   HCA's nursing strategy "is the evil and the fuel that led to the revenues that has allowed the defendant to expand into all its markets." (Id.)   The amended complaint speculates about the number of lives lost so that "the defendant can raise revenue." (Id. at ¶ 23).   However, the real nature of the plaintiffs' claims sometimes escapes, and plaintiffs tacitly acknowledge they are alleging that the defendant's nursing policies represent *unsound medical decisions*.   Thus, the response to the motion to dismiss stresses that HCA's policies dictate staffing levels "regardless of any individual medical judgments in the medical communities." (Dkt. No. 31, at 11-12).   The amended complaint thus alleges that HCA has engaged in "dangerously low levels" of staffing. (Dkt. No. 23 at ¶ 13).   The amended complaint alleges that HCA's nursing policies required the hospital caring for plaintiff Adams

> to keep its nursing level at dangerously low levels, the nurses were unable to properly care for Mr. Adams, which in turn caused and/or contributed to his death as the necessary steps that needed to be taken to provide Mr. Adams with a reasonable chance to properly heal and recover from his surgery were not taken.

(Id. at ¶ 37).   The complaint makes the same allegations of personal injury and breach of a duty of care with respect to plaintiff Spires, stating that "[b]ased on this inadequate [nursing] monitoring and

care, Mr. Spires passed away on April 22, 2004." (Id. at ¶ 29).  Speaking about HCA's policies nationwide, the complaint cites a study showing staffing rates at various hospitals, and concludes that "[t]hese numbers are unreasonably dangerous for patients."  (Id. at ¶ 42).

While HCA is not itself a medical provider, the present actions involve claims of substandard medical care at licensed medical institutions, arising from staffing policy decisions which state law requires be made with appropriate medical judgments.  Although plaintiffs have proceeded against the corporate parent rather than the hospitals themselves, the fact remains that at their core, the plaintiffs' claims involve the medical judgments of the affiliated hospitals.

Of course, as plaintiffs argue, a desire of economic profit may underlay HCA's staffing decisions.  But the same is true of virtually any decision by any medical practitioner.  The plaintiffs' argument would have the effect of transmogrifying any and all malpractice claims (so long as someone involved was seeking a profit) into a consumer protection claim.  No authority exists for such a drastic reworking of the law.  Courts have frequently expressed the concern that consumer protection law might undermine the extensive law governing medical malpractice.  *See, e.g., Nelson v. Ho*, 564 N.W.2d 482, 486 (Mich.App. 1997); *Kiser v. St. Mary's Hosp.*, 662 F.Supp. 191, 194 (D. Idaho 1987).

The plaintiffs also stress that portion of the KCPA which broadly defines what the term "services" means for the purposes of consumer protection.  K.S.A. 50-624(i)(2) provides that the term includes "privileges with respect to transportation, hotel and restaurant accommodations, education, entertainment, recreation, physical culture, hospital accommodations, funerals and cemetery accommodations."  But the broad language of the KCPA is not to be understood as displacing other, more specific bodies of law.  *See Chelsea Plaza Homes, Inc., v. Moore*, 226 Kan.

430, 434, 601 P.2d 1100 (1979) (holding that the "very broad" KCPA must give way to the more specific state landlord and tenant act).  Here, the KCPA merely acknowledges that general "privileges" in various public accommodations are services within the meaning of the Act.  The Act does not explicitly or implicitly attempt to incorporate into its ambit the provisions of medical services which are made according to medical judgments, which, as noted earlier, are independently governed by specific state regulations.  The law of New Hampshire is not substantially different, providing detailed regulations governing hospital policies.  See R.S.A. 151:1 *et seq.*

The court finds that plaintiffs' claims are in reality medical malpractice claims, and are not appropriately advanced as claims for consumer protection or unjust enrichment.  Further, the court finds that public policy has committed the policies which plaintiffs here attack to administrative regulation and the requirements that such policies be undertaken according to appropriate medical judgments.  The plaintiffs' general claims of consumer protection violations or unjust enrichment represent an attempt to circumvent this policy, and accordingly those claims cannot stand.

The court notes that plaintiffs' claims of unjust enrichment would in any case be subject to dismissal because there is no allegation that either of the plaintiffs themselves made any payments to their respective hospitals, and there are no allegations that any of these payments were ever tendered to HCA.  A claim for unjust enrichment requires proof that the plaintiff conferred a benefit on a defendant, who received and kept that benefit under circumstances rendering it unjust.  *Sheldon v. Vermonty*, 31 F.Supp. 1287, 1294 (D. Kan. 1998); *Pella Windows and Doors, Inc., v. Faraci*, 530 A.2d 732 (N.H. 1990).  Here, plaintiffs have made no attempt to show any payments from themselves or their decedents to HCA, or show that any such payments made their way somehow to HCA.

With respect to remaining claims, the court finds that dismissal of the plaintiffs' general negligence claims is appropriate because the plaintiffs have failed to demonstrate any circumstances which would justify imposing liability under these circumstances on HCA, rather than on the hospitals to which they were actually admitted.  The plaintiffs contend that they have raised claims of independent negligence on the part of HCA, but the amended complaint asserts claims based upon the admission of both plaintiffs' decedents to inadequately-staffed hospitals which were "HCA owned."  (Dkt. No. 23, at ¶¶ 26, 30).  Plaintiffs have not pleaded any facts which might support piercing of the corporate veil.  The hospitals themselves are owned by separate HCA affiliates.  The plaintiffs' decedents were admitted to hospitals owned by corporations legally distinct from the defendant HCA.  Because there have been no fact allegations which would justify the disregarding of these established corporate boundaries, dismissal is appropriate.  *See Amoco Chem. Corp., v. Bach*, 222 Kan. 589, 593 567 P.2d 1337 (1977) (stressing that the "[p]ower to pierce the corporate veil is to be exercised reluctantly and cautiously").

Finally, the court finds that the plaintiffs have not presented any valid claim for declaratory or injunctive relief since plaintiffs have shown no real or immediate likelihood that they will in the future be subjected to further wrongful conduct by HCA. *See City of Los Angeles v. Lyons*, 461 U.S. 95 (1983).  Here, the plaintiffs must show more than a past exposure to wrongful conduct. *See Harris v. Champion*, 51 F.3d 901, 907 (10th Cir. 1995); *Smith v. Colorado Dep't of Corrections*, 23 F.3d 339 (10th Cir. 1994).  The plaintiffs have not made such a showing.  They point out that HCA is the largest owner of hospitals in the country, which has a significant share of the market "in many states."  (Resp. at 28).  But the plaintiffs offer not the slightest basis for supposing that HCA is the *only* provider of hospital services to which they might turn in the future.   The plaintiffs have

completely failed to demonstrate any substantial risk of future injury, let alone the specific showing of concrete, actual, or imminent injury required by law as a prerequisite to declaratory or injunctive relief.  Accordingly, the court will dismiss this claim of the plaintiffs.

The proposed amended complaint resolves none of the substantive legal issues raised by HCA's motion to dismiss.  The motion for leave to amend states that the proposed amended complaint adds one party (Mrs. Hope Nolan), addresses some clerical mistakes, and "[c]larifies allegations that make many issues raised in defendant's motion to dismiss moot."  (Dkt. No. at 2). In fact, the accompanying memorandum to the motion to amend is devoid of case authority for the broad imposition of liability the plaintiffs seek, or specifically stating how it will address the issues raised in HCA's motion to dismiss.  Plaintiffs justify their claims with the suggestion that "[i]t is a matter of common sense that any person or entity is responsible for what he, she, or it does." (Dkt. No. at 2).

The court finds that filing the proposed amended complaint would be futile and accordingly that permission should be denied.  *TV Comm. Network  v. Turner Network Television*, 964 F.2d 1022, 1028 (10th Cir. 1992).  The proposed second amended complaint does not address the underlying problem with the core of plaintiffs' claim, namely, the attempt to translate what are really claims of medical malpractice into consumer protection claims. Plaintiffs' claims inherently involve determinations of whether the nurse staffing decisions at the various hospitals are inconsistent with sound medical practice.  In the previous versions of their complaints, plaintiffs sought to cloak the reality of their claims by using the language of consumer protection.  The proposed second amended complaint, which merely adds additional language of consumer protection, does not alter this reality.

Nor does the proposed amendment supply allegations which would correct the critical failures in plaintiffs' allegations of negligence.  As noted earlier, plaintiffs have failed to make any showing sufficient to justify disregarding the corporate identity of the respective hospitals.  Although the proposed amended complaint adds some allegations in this respect, it still provides no information which would permit a court to conclude that the corporate entities here would frustrate recovery in any direct action against the hospitals which actually treated the individual plaintiffs, and no showing that maintenance of the corporate identities would work any significant injustice.  The court finds nothing in the proposed amended complaint which would rectify the inherent flaws in plaintiffs' claims.

IT IS ACCORDINGLY ORDERED this 27th day of July, 2006, that the defendant's Motion to Dismiss (Dkt. No. 26) is hereby granted.  The plaintiffs' Motions for Leave to Amend (Dkt. No. 37), and Motion for a Determination (Dkt. No. 39), as well as the defendant's Motion for Protective Order (Dkt. No. 41) and Motion to Strike Class Allegations (Dkt. No. 44) are hereby denied.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE